| | | |
|---|---|---|
| REBECCA FUNK, TONYA SMITH, & LINDA PENNELL, on behalf of themselves and all other similarly situated persons<br>Plaintiff,<br><br>v.<br><br>ANNE L. PRECYTHE in her official & individual capacity as Director of the Missouri Dept. of Corrections, and CHRIS MCBEE, in his official and individual capacity as Warden of the Chillicothe Correctional Center, and DOES 1 - 10<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case #<br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED**<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs, Rebecca Funk, Tonya Smith and Linda Pennell, through the undersigned counsel allege against the Defendants as follows:

### INTRODUCTION

1. Each year, the State of Missouri condemns hundreds of detainees to suffer in shockingly bad conditions inside of Chillicothe Correctional Center, (herein: "CCC"). On any given day, inmates in the prison must endure issues concerning overcrowding, inadequate medical care, unsanitary conditions, and unhealthy food.

2. Further Inmates must endure temperatures extremes ranging from stifling heat in the summers to frigid cold in the winters; inconsistent and inadequate provision of medical care and mental health treatment; poor air quality and proliferation of microbial mold caused by the prison's lack of proper sanitation; overcrowding; insufficient staffing; and a culture of fear and indifference that allows these conditions to continue at the prison.

3. Possibly the most egregious is that due to overcrowding, inmates are barely fed, and the food they are fed with contains a wheat product manufactured for farm animals which is, in fact, marked "Not Safe for Human Consumption."

4. These conditions not only violate the United States Constitution, but also run afoul of the most basic standards of human decency. As described in further detail below, the conditions at the CCC not only fail to meet the requisite standards set forth in Missouri Revised Statutes, Title XIII, Chapter 221 *et seq.*, but fail to meet the requisite standards for which most POW's are protected under the Geneva Convention.

5. The conditions at the Chillicothe Correctional Center, as further described in detail below, are so squalid and the healthcare so lacking, that they are, and have been, tantamount to a death sentence for at least one inmate, and ongoing suffering for many of the detainees. Accordingly, the treatment of inmates at the Chillicothe Correctional Center constitutes a "cruel and unusual" punishment in violation of the Eighth Amendment, as well as violations of the First, and Fourteenth Amendments to the United States Constitution.

6. For these reasons and those set forth in further detail below, Plaintiffs bring this action on behalf of themselves and all others similarly situated inmates and detainees for monetary damages as well as declaratory and injunctive relief.

**JURISDICTION AND VENUE**

7. This is a civil rights action arising under 42 U.S.C. §1983, 28 U.S.C. § 2201, *et seq.*, and the First, Eighth, and Fourteenth Amendments to the U.S. Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

8. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because the Defendants are located in this District and the events giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

9. Plaintiff Rebecca Funk, is an individual, and is, and at all times herein mentioned an inmate at the CCC, within the jurisdiction of this Court. Plaintiff is, and, at all times herein mentioned was, subjected to various unconstitutional conditions as described herein.

10. Plaintiff, Tonya Smith, is an individual, and is, and at all times herein mentioned an inmate at the CCC, within the jurisdiction of this Court. Plaintiff is, and, at all times herein mentioned was, subjected to various unconstitutional conditions as described herein.

11. Plaintiff Linda Pennell, is an individual, and is, and at all times herein mentioned an inmate at the CCC within the jurisdiction of this Court. Plaintiff is, and, at all times herein mentioned was, subjected to various unconstitutional conditions as described herein.

12. Defendant, CHIS MCBEE, is the current Warden of Chillicothe Correctional Center ("CCC)", and is, and at all times herein mentioned was, the acting Warden of the CCC, and who, in concert with Defendant, Director ANNE L. PRECYTHE, is, and at all times herein mentioned was, responsible for oversight of the conditions at CCC, and at all times herein mentioned directed the operations of the CCC within the jurisdiction of this Court.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Despite numerous other IRRs that have been lodged by Plaintiffs and ignored by Defendants concerning the prison conditions, Plaintiff Funk recently filed an IRR that specifically describes the overcrowding issues, unsanitary conditions, unhealthy food, and other issues set forth in this complaint. The IRR was denied on or about 3/19/18. Prison officials stated there were no problems at the prison. Thus, plaintiffs, and the proposed class, have no other remedy available to them to redress the deplorable conditions at the prison.

## SUMMARY OF ALLEGATIONS

## I. ALLEGATIONS COMMON TO ALL PLAINTIFFS AND OTHERS

14. Plaintiffs assert that each of them, and all other class members, were, and are, subject to the following inhumane conditions:

**A. Unsanitary and Unhealthy Conditions: Rodent and Insect Infestation, Overflowing Sewage, and Black Mold, Starvation and Unlawful Use of Dietary Supplement.**

i. The plumbing backs up constantly causing raw sewage, including fecal matter, urine, blood and vomit to exit the showers, pour down the hallways and into the cells. The toilet facilities in the CSP are non-functional. When a toilet was flushed in one area, the contents of the toilet, including all manner of human excrement, would leak from the back or the front of the toilet onto the floor.

Despite these unsanitary, disgusting conditions, Prison staff fail and refuse give the prisoners adequate cleaning supplies such as bleach, or other cleansers to clean themselves, or assign the duties to an inmate trustee. Instead, inmates must rely on what the prison staff calls "7.5." "7.5" has no discernible chemical smell and appears to be tap water[1] provided to them by prison staff to clean and disinfect the toilets and showers. This is horribly inadequate, since the bathrooms frequently have blood and feces on the toilets, walls and floors, which may be wiped down with "7.5", but obviously does nothing to sterilize or prevent bacteria and mold from proliferating. Further, every shower within the prison is covered with black mold. As a result, CCC has subjected and continues to subject all people confined in the facility, including Plaintiffs and class members, to a substantial risk of harm, injury, or death by failing to employ sufficient

---

[1]. Acidity in water is rated on a ph scale of 0-14, with 7.0 being neutral. Anything lower than 7.0 is considered acidic while anything above 7.0 is considered alkaline. Studies have shown that water with a ph of lower than 2.4 (acidic) can be used as a strong disinfectant. However, water with a ph of 2.5 or higher, including alkaline water has no disinfectant properties whatsoever.

remediation measures to eradicate inhumane and unsanitary conditions.

      ii.   CCC inmates state that mold is a constant presence in the facility, specifically within the bathrooms and showers. Most of this mold appears to be black mold. Despite the fact that inmates have registered many complaints about the mold, prison staff has undertaken no serious efforts to remediate this dangerous condition.

      iii.   Toilets, sinks, and showers in the prison are filthy and regularly experience plumbing problems. The toilets and sinks often overflow, forcing inmates to navigate urine and feces in order to use the restroom facilities. This experience, and the resulting stench, is even worse in the extreme heat that inmates suffer during the summertime.

      iv.   Rodents and insects are a feature of life in the CCC. Almost universally, Plaintiffs and other inmates, report seeing rodents and other insects in nearly every part of the facility.

      v.   The above mentioned plumbing failure(s), coupled with the failure of prison staff to properly clean and disinfect the facility, or otherwise provide adequate disinfectant(s) and cleanser(s), has allowed a culture of microbial mold to permeate throughout the entire prison. As a result, inmates are subject to mold related upper and lower respiratory infections and other microbial illnesses, many of which may potentially have a lifelong effect on the inflicted.

      vi.   Plaintiffs, and all other class members are barely fed. The portions are smaller due to the overcrowding in the prison, and due to the overcrowding, many inmates must wait outside of the kitchen area for hours while they wait for their food. Worse yet, the food they are fed is laced with a wheat product manufactured by Ardent Mills for horses and other farm animals. This product is specifically marked "Not Safe For Human Consumption". Nonetheless, and in complete ignorance of the manufacturer's specific warning and instructions, prison staff has been, and currently are, feeding this non-edible product to Plaintiffs and all other class members on a

5

Case 5:18-cv-06034-ODS    Document 1    Filed 03/23/18    Page 5 of 17

daily basis.

**B.    Inadequate Medical Care**

i.  The CCC has subjected and continues to subject all people confined in the prison, including Plaintiffs and class members, to a substantial risk of harm, injury, or death by failing to provide adequate medical care and by failing to implement adequate mechanisms to ensure a sufficient medical care delivery system.

ii.  The CCC does not conduct timely or adequate medical assessments of individuals entering the prison, nor do Defendants process timely medical complaints from individuals seeking medical care.   Prisoners report they must wait up to six months in order to see a doctor for a specific illness, but by then the illness has either subsided (after the detainee had to rely on their own bodies to fight off the illness, rather than receive medical care) or the illness or condition becomes markedly worse due to the lapse in time between when the detainee reports the illness, and when the detainee is finally able to see a doctor to seek treatment.

iii.   Prison staff is selective and arbitrary in determining those medical conditions that warrant medical evaluation and treatment and those that do not.

As a result, many inmates who report that they are in need of medical attention are simply ignored or told to stop complaining.   Or, they are given what the medical staff believes to be a universal cure-all for all illnesses at the prison: Ibuprofen.   In some cases, this results in the exacerbation of serious medical conditions. This general indifference to requests for medical care extends to mental health treatment, which is in severe shortage in the prison relative to the significant need.

**C.    Overcrowding, Inadequate Staffing and Retaliation from CCC Staff**

15.    The CCC's failure to implement mechanisms to accommodate for the appropriate

number of detainees, along with its failure to provide an adequate number of officers to supervise inmates, has subjected and continues to subject all people confined in the prison, including Plaintiffs and class members, to a substantial risk of harm, injury, or death.

16. The CCC's lack of oversight and lack of training and supervision of its correctional officers has created an environment that promotes verbal abuse and retaliation.

17. Many inmates describe CCC officers as moody and vindictive. Actions as minor as requesting a medical form, or IRR concerning the prison conditions can result in a detainee being the recipient of anger, screaming, and cursing by prison staff.

**D.    Insufficient Ventilation and Extreme Heat**

18. The CCC has subjected and continues to subject all people confined in the CCC, including Plaintiffs and class members, to a substantial risk of harm, injury, or death by failing to provide adequate central heating and cooling and by failing to employ sufficient mechanisms to mitigate the extreme heat during the summer, and extreme cold during the winter.

19. Inmates report that during the winter they can hear cold air leaking through the windows, which causes a high pitched whistling sound.   In order to alleviate the extreme cold, inmates will purchase up to four blankets and layer themselves with it in order to stay warm.

20. During the summer months the same leaks that exist on the windows and other parts of the building will allow hot, damp air into the facility, which causes the inmates to wear as little as possible during the evening to stay cool.

21. The Defendants have willfully refused and failed to take reasonable measures to deal with the continued heat & cold in the prison and the health-related risks associated with the extreme heat and cold during the winter.

22. The Defendants have shown deliberate indifference to the health and of the

7

Plaintiffs and class members by failing to enact intervening policies that would prevent the continued heat-related health issues.

## II. INDIVIDUAL PLAINTIFFS' ALLEGATIONS

### A. Rebecca Funk

23. In addition to the above, Plaintiff is enrolled in the "Beauty for Ashes" re-entry program. This program requires participants to rehabilitate themselves spiritually, mentally and emotionally to become law abiding, productive members of society.

24. As a result of the overcrowding issues, specifically housing 5 persons in a cell that was not designed to hold that many individuals, Plaintiffs and the proposed class suffer anxiety and stress levels have increased substantially.

25. Moreover, Plaintiff discovered, after suffering severe stomach cramps and digestive issues that she and the other inmates were being fed a wheat product manufactured by the Ardent Mills., for horses and other farm animals. The bags in which this animal product is packaged in clearly states "Not Fit for Human Consumption." Despite this clear labeling, inmates are fed this "food" anyway as a breakfast meal for the prisoners. Prisoners at CCC are well aware of the label's warning, and in fact, older detainees that have been at CCC for several months or longer must warn the younger, newer detainees not to eat the breakfast meal because of Ardent Mill's label warning that the food is not fit for human consumption. Another filler manufactured by Jiffy Foodservice, LLC, is overused by the kitchen in order to thicken or add bulk to what is an otherwise inadequately small portion of food.

### B. Tonya Smith

27. In addition to the above overcrowding and food issues, while incarcerated at CCC, Ms. Smith broke her collar bone. X-rays were taken, and indicated her collarbone was in fact

8

broken, but prison medical staff never set the broken bone, or even provided an arm sling. Instead prison staff told her "you'll just have to deal with it" and then gave her ibuprofen for the pain.

### C. Linda Pennell

28. In addition to the above, Ms. Pernell suffered an attack by a dog while she was volunteering at an animal shelter. The dog bit her face, however the prison hospital never treated her cuts, and only gave her ibuprofen. She now has several scars on her face.

## III. CLASS ALLEGATIONS

29. This action is brought and may be properly maintained as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

30. Plaintiffs bring these claims on behalf of themselves and on behalf of all persons who are, were, or will be incarcerated in the CCC. A class action is a superior means, and the only practicable means, by which Plaintiffs and class members may challenge the CCC's allowance and maintenance of unconstitutional conditions in the prison.

31. Plaintiffs represent a class of persons ("Injunctive Class") seeking injunctive and declaratory relief and defined as follows:

**All persons who are, have been, or will in the future become detainees in the CCC**

32. Certification of the Injunctive Class under Federal Rule of Civil Procedure 23(b)(2) is appropriate because the Defendant CCC, through the policies, practices, and procedures that govern the conditions and patterns of conduct in the prison, has acted and refused to act on grounds generally applicable to the Injunctive Class.

33. Injunctive relief compelling the CCC to comply with constitutional requirements will protect both those individuals currently detained in the prison and those individuals, including Plaintiffs, subject to incarceration in the CCC, in the future should retaliation occur against the

Plaintiffs and the proposed class.

34. Plaintiffs also represent classes of persons ("Damages Classes") seeking damages for harms incurred as a result of the conditions described herein and defined as follows:

35. Certification of the Damages Classes under Federal Rule of Civil Procedure 23(b)(3) is appropriate in that the Plaintiffs and class members seek monetary damages, common questions predominate over any individual questions, and a class action is superior for the fair and efficient adjudication of this controversy.

36. **Numerosity/Impracticability of Joinder:** Class members are so numerous that joinder of all members would be impracticable.

37. Upon information and belief, the classes consist of hundreds, if not thousands of individuals. The precise number of class members can be readily ascertained and identifying information for class members is, upon information and belief, within the Defendant CCC's possession or control.

38. **Commonality and Predominance:** There are questions of law and fact common to all class members that predominate over any questions affecting only individual class members, including but not limited to the following:

> a. Whether the unsafe and unsanitary conditions at the CCC described in this Complaint violate the Eighth and Fourteenth Amendments to the United States Constitution.
> b. Whether the policy or practice of retaliation against inmates by CCC staff as described in the Complaint violate the First Amendment to the United States Constitution.
> c. Whether the CCC's policies and practices subject inmates to a substantial risk of harm from unsanitary conditions, and therefore constitute a violation of Plaintiff and Class members' rights under the Eighth and Fourteenth Amendments to the United States Constitution.
> d. Whether the CCC's acts and/or omissions in the failure to provide safe and sanitary conditions for detainees reflect deliberate indifference to the health and safety of detainees and inmates, and therefore constitute a violation of the Eighth and Fourteenth Amendments to the United States Constitution.

10

e.  For the Injunctive Class, what type of injunctive relief is appropriate and necessary to ensure that the conditions of the CCC comply with constitutional standards.
    f.  For the Damages Classes, what damages should be awarded to redress and compensate for the harms suffered by class members as a result of the conditions and conduct created by the unconstitutional policies and practices of the Defendant, CCC.

39. **Typicality:** The named Plaintiffs' claims are typical of the claims of class members, and they have the same interests as all other class members that they represent. Each of them suffered injuries from the failure of the CCC to comply with basic constitutional protections. The named Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of class members and are based on the same legal theories. The answer to whether the conditions and conduct in the CCC reflect unconstitutional policies and practices will determine the claims of the named Plaintiffs and every other class member.

40. **Adequacy:** the named Plaintiffs are adequate representatives of the classes because their interests do not conflict with the interests of the class members they seek to represent; they have retained counsel competent and experienced in civil rights litigation and complex class action litigation; and the Plaintiffs intend to prosecute this action vigorously. The interests of class members will be fairly and adequately protected by the Plaintiffs and Plaintiffs' counsel.

## CLAIMS FOR RELIEF

## COUNT I

**Fourteenth Amendment, 42 U.S.C. § 1983 – Cruel and Unusual Conditions**

41. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

42. By the policies and practices described herein, the Defendants have subjected and continues to subject Plaintiffs Rebecca Funk, Tonya Smith, Linda Pennell and other class

11

members to a substantial risk of serious harm and injury from such inhumane conditions as poor ventilation and extreme heat, insect and rodent infestations, overflowing sewage, unsanitary conditions due to inadequate cleaning practices, black mold, inadequate medical care, overcrowding and under-staffing, retaliation by prison staff, and has violated their right to basic human dignity and to be free from cruel and unusual conditions under the Fourteenth Amendment.

43. These policies and practices have been and continue to be implemented by the CCC and its agents, officials, employees, and all persons acting in concert under color of state law, in their official capacity, and are the proximate cause of the Plaintiffs' and class's ongoing deprivation of rights secured under the Fourteenth Amendment.

44. The Defendants have been and is aware of all of the deprivations complained of herein, and has condoned or been deliberately indifferent to such conditions and conduct. It should be obvious to the CCC and to any reasonable person that the conditions imposed on Plaintiffs and class members for many months or years at a time cause tremendous mental anguish, physical harm, pain, and suffering to such individuals. Moreover, the CCC has repeatedly been made aware, through IRR administrative grievances that class members have experienced and continue to experience, or are at risk of, significant and lasting injury.

## COUNT II

### Eighth Amendment, 42 U.S.C. § 1983 – Cruel and Unusual Punishment

45. Plaintiffs re-allege each paragraph of this Complaint as though fully set forth.

46. By the policies and practices described herein, the Defendant CCC has subjected and continues to subject Plaintiffs Rebecca Funk, Tonya Smith, Linda Pennell, and other class members to a substantial risk of serious harm and injury from such inhumane conditions as poor ventilation and extreme heat, insect and rodent infestations, overflowing sewage, black mold,

12

inadequate medical care, overcrowding and under-staffing and retaliation by prison staff and has violated their right to basic human dignity and to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. These policies and practices have been and continue to be implemented by the CCC and its agents, officials, employees, and all persons acting in concert under color of state law, in their official capacity, and are the proximate cause of the Plaintiffs' and class's ongoing deprivation of rights secured under the Eighth Amendment.

47. The Defendants have been and should be aware of all of the deprivations complained of herein, and has condoned or been deliberately indifferent to such conditions and conduct. It should be obvious to the CCC and to any reasonable person that the conditions imposed on Plaintiffs and class members for many months or years at a time cause tremendous mental anguish, physical harm, pain, and suffering to such individuals. Moreover, the Defendants have repeatedly been made aware, through IRR administrative grievances that class members have experienced and continue to experience, or are at risk of, significant and lasting injury.

## COUNT III

### First Amendment, 42 U.S.C. § 1983 – Unlawful Retaliation

48. Plaintiffs re-allege each paragraph of this Complaint as though fully set forth.

49. Critical to preservation of the Eighth and Fourteenth Amendment rights of detainees to be free from cruel and unusual conditions is the ability to lodge complaints and grievances regarding prison conditions, including the conduct of prison staff, an ability protected by the First Amendment to the United States Constitution.

50. By its policies and practices, the Defendants McBee and Precythe have subjected and continue to subject those Plaintiffs and class members who lodge valid IRRs in violation of the First Amendment. This unlawful retaliation includes, but is not limited to: punishing complaining

inmates to "the hole" or otherwise denying certain allowances and privileges to complaining inmates.

51. The Defendants' policy and practice of unlawful retaliation against prison inmates has been and continues to be implemented by the CCC and its agents, officials, employees, and all persons acting in concert under color of state law, in their official capacity, and are the proximate cause of the Plaintiffs' and class's ongoing deprivation of rights secured under the First Amendment.

52. The Defendants have and is aware of all of the deprivations complained of herein, and has condoned or been deliberately indifferent to such unconstitutional conduct. It should be obvious to the CCC and to any reasonable person that the retaliatory conduct of the CCC and its agents causes tremendous mental anguish, physical harm, pain, and suffering to such individuals. Moreover, the Warden, through his subordinates have repeatedly been made aware, through IRR administrative grievance filings that class members have experienced and continue to experience, or are at risk of, significant and lasting injury.

## COUNT IV

### 42 U.S.C. § 1983 – Failure to Supervise and Train

53. Plaintiffs re-allege each paragraph of this Complaint as though fully set forth.

54. It is and has been the Defendants McBee and Precythe, on behalf of the Missouri DOC, policy, practice, and custom to inadequately instruct, train, and supervise its correctional officers and other prison employees and officials with respect to maintaining sanitary and habitable conditions in detainees' living quarters; avoiding contact with human waste and sewage; serving the prisoners food that is clearly marked not fit for human consumption, or otherwise repairing or remedying dangerous or repugnant conditions at the prison.

55. The CCC, as a policy and practice, likewise failed to instruct, train, or supervise its correctional officers with respect to responding to detainee complaints in an appropriate and non-retaliatory manner. To the contrary, the Defendants have instead ratified the treatment of prison inmates by failing to remedy unconstitutional conditions or punish staff for misconduct.

56. In its failures, the Defendants have been deliberately indifferent to the rights of prison inmates, and these failures are the direct and proximate cause of the violations of Plaintiffs' and class members' rights as alleged herein, as well as damages including mental anguish, physical harm, pain, and suffering.

## COUNT V

## (28 U.S.C. § 2201-Declaratory Judgment Act)

57. Plaintiffs re-allege each paragraph of this Complaint as though fully set forth.

58. Under 28 U.S.C. § 2201 of the Declaratory Judgment Act, this Court is empowered to issue a declaratory judgment regarding the substandard, inhumane conditions present in the Chillicothe Correctional Center, as described above.

59. The Court is specifically empowered to issue a declaratory judgment and order thereon which declares, a) Certification of the case as a class action, appointing the named plaintiffs as representatives of their respective Classes; b) Defendant's conduct has violated Plaintiffs' and class members' Fourteenth Amendment rights to safe, sanitary, and healthy prison conditions, and to be free from punishment; c) Defendant's conduct has violated Plaintiffs' and class members' Eighth Amendment rights to be free from cruel and unusual punishment; d) Defendant's conduct has violated Plaintiffs' and class members' First Amendment rights to be free from retaliation when in engaging In protected conduct, such as filing grievances;

60. There presently exists a justiciable controversy regarding the Plaintiff's ,

and other class members, rights as set forth above, and Defendants, and each of their, failure and refusal, and continuing to failure and refusal to correct the unsanitary, inhumane conditions which presently exist inside of the Chillicothe Correctional Center described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all class members, respectfully request that this Court:

a. Issue an order certifying this suit as a class action;
b. Enter judgment in favor of Plaintiffs and class members and against the Defendant CCC;
c. Enter a declaratory judgment that declares:
   i. Defendant's conduct has violated Plaintiffs' and class members' Fourteenth Amendment rights to safe, sanitary, and healthy prison conditions, and to be free from punishment;
   ii. Defendant's conduct has violated Plaintiffs' and class members' Eighth Amendment rights to be free from cruel and unusual punishment;
   iii. Defendant's conduct has violated Plaintiffs' and class members' First Amendment rights to be free from retaliation when in engaging In protected conduct, such as filing grievances;
d. Enjoin the Defendants, its agents, officers, employees and successors in office, along with those acting in concert with them, from engaging in the unlawful practices described herein;
e. To the extent that the Defendant is allowed to continue to house inmates at the CCC, issue an order requiring Defendant to pay a daily fine to be determined by the court until such time that the CCC demonstrates the capacity to operate the prison in accordance with constitutional requirements, including but not limited to renovation, repair, and acquisition or installation of necessary devices and equipment to ensure proper ventilation and temperature control; complete and adequate remediation of unsafe and unsanitary conditions such as mold, sewage overflow, requiring that the prison refrains from feeding prisoners food that is not fit for human consumption, and adoption of policies, training, supervision, and monitoring to correct staff misconduct and inmate oversight;
g. Award Plaintiffs and class members monetary damages as the Court deems appropriate, as well as all litigation costs, expenses, and attorneys' fees recoverable under federal law;
h. Allow such other and further relief as this Court deems just and proper.

Dated: 3/23/18                                            Respectfully submitted,

                                                                              /s/ Joseph LaCome

Joseph LaCome, #63533MO
3025 E. Hawkins St.
Springfield, MO 65804
Ph. 415-847-1944
lacomelaw@gmail.com
Attorney for Plaintiffs and
All Class Members